| |
|:---:|
| **Makmudova v Cohen** |
| 2024 NY Slip Op 32357(U) |
| July 10, 2024 |
| Supreme Court, Kings County |
| Docket Number: Index No.: 521869/2016 |
| Judge: Lisa S. Ottley |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS - **PART 24**
-------------------------------------------------------------------X
VICTORIA MAKMUDOVA,

                    Plaintiff,                    Index No. 521869/2016

        -against-                                 **DECISION and ORDER**

    ABRAHAM COHEN,
                            Defendants,
-------------------------------------------------------------------X

**Hon. Lisa S. Ottley, J.S.C.**

Upon the foregoing documents and as set forth on the record (April 15, 2024), the Plaintiff's Order to Show Cause (hereinafter "OSC") is granted in part as set forth below.

This is an action commenced by Plaintiff Victoria Makmudova (hereinafter "Plaintiff" or "Plaintiff Makmudova") to recover damages sustained as a result of trip and fall which occurred on May 4, 2016 at the premises identified as 3731 Nautilus Avenue, Brooklyn, New York 11224 (hereinafter "the Property"), which was owned by Defendant Abraham Cohen (hereinafter "Defendant" or "Defendant Cohen"). Following an inquest, the Court granted Judgment for Plaintiff Makmudova and against Defendant Cohen in the amount of $812,468.00, which was entered on December 22, 2017. On August 24, 2023, Defendant Cohen attempted to transfer the Property to the Irrevocable Trust of Abraham Cohen (hereinafter "the Trust"), by a Deed dated July 28, 2014. Following the recording of the Deed, on December 19, 2023, the Plaintiff filed the instant OSC seeking an Order for the following relief:

**(1)** Declaring the alleged Irrevocable Trust of Abraham Cohen to be **null and void**, *ab initio*, and reverting the property at 3731 Nautilus Avenue, Brooklyn, New York 11224 (Block 07003, Lot 0053) back to the Defendant; and/or **(2)** Declaring the transfer of the deed pertaining to the property at 3731 Nautilus Avenue, Brooklyn, New York 11224 (Block 07003, Lot 0053) from

1

Defendant Cohen to the alleged Trust to be a **Fraudulent Conveyance/Voidable Transfer** and (a) Avoidance of the Transfer with the Property reverting it back to the Defendant, (b) an Order of Attachment, (c) Injunction, (d) Appointment of a Receiver, (e) Monetary Damages, and (f) costs and sanctions (inclusive of attorneys' fees); and/or **(3)** Voiding the transfer of the property at 3731 Nautilus Avenue, Brooklyn, New York 11224 from Defendant Cohen to the alleged Trust, based on the principals of **Res Judicata and Collateral Estoppel**; and/or **(4)** Declaring the alleged Trust to be null and void and reverting the property back to Defendant Cohen, based on the **interests of justice and as a matter of public policy**; and/or **(5) Civil Fraud** (a) declaring the Trust Formation Documents to be a "Fraudulent Document" created in 2023 and back dated to commit fraud upon the Plaintiff, (b) the non-parties consisting of the Trust, the trustee Gilad Cohen, Jacob C. Elbogen and Shmuel Duvid Taub as additional respondents/defendants, (c) scheduling this matter for a traverse hearing, (d) awarding Plaintiff and her counsel $1,000,000.00 in additional damages jointly and severally against all the Defendants and the non-parties for the conspiracy to commit and the actual commitment of fraud, (e) granting $100,000.00 (or the maximum amount allowed by law) in sanctions and full attorneys' fees to Plaintiff's counsel, jointly against Defendant Cohen and the non-parties for allegedly conspiring to, and allegedly committing fraudulent, frivolous, and malicious activity to Defraud the Plaintiff; and/or **(6)** Declaring the alleged Trust to be a "**Grantor's Trust**" and reverting the property at 3731 Nautilus Avenue, Brooklyn, New York 11224 (Block 07003, Lot 0053) back to the Defendant; and/or **(7)** (a) Holding the Defendant in **Civil and Criminal Contempt**; (b) directing Defendant Cohen to respond to the Information Subpoena and appear for his examination under oath by days certain; (c) Sanctioning the Defendant $1,000.00 per day until Defendant complies with the information subpoena; (d) issuing a warrant for Defendant's arrest and incarceration until compliance; and (e) Awarding Plaintiff fees and costs incurred in

2

[* 2]

enforcing the Subpoena, including the instant OSC;

The Plaintiff's OSC, originally returnable on January 18, 2024, was administratively adjourned to February 26, 2024, at which time Mr. Akin appeared for the Plaintiff, Mr. Schleifer, Esq., appeared for the non-party Taub and Defendant Cohen appeared personally. The non-parties Gilad Cohen and Jacob C. Elbogen defaulted in appearance. On this first appearance of the OSC, Defendant Cohen requested an adjournment stating that he needed time to retain counsel. Mr. Akin objected to the adjournment arguing that Defendant Cohen has a history (over the past 7 years of litigation) of being dilatory and engaging in abusive delay tactics; Mr. Akin insisted that this was just another delay tactic, especially since Defendant Cohen having been served with the OSC over 50 days ago, had more than ample time to retain Counsel. Over Mr. Akin's objection, the Court granted Defendant Cohen's request issuing an Order; (1) Adjourning the OSC to April 1, 2024; (2) expanding Defendant Cohen and the non-parties' time to submit Opposition to March 25, 2024 with Plaintiff to submit a Reply by April 1, 2024; (3) declaring service on the Defendant and non-parties to be complete, *nunc-pro-tunc*; (4) directing Defendant Cohen to respond to the Information Subpoena on or before March 14, 2024; and (5) precluding Defendant Cohen and non-party alleged Trustee Gilad Cohen from selling, transferring mortgaging or engaging in any act detrimental to the property more commonly known as 3731 Nautilus Avenue, Brooklyn, New York[1]. NYSCEF Doc. No. 141.

On April 1, 2024 (second appearance) Mr. Akin appeared for the Plaintiff, Mr. Schleifer, Esq., appeared for the non-party Taub and Defendant Cohen, again appeared personally without an attorney. Defendant Cohen advised the Court that he retained an attorney but that his attorney was

---

[1] Defendant Cohen was provided with a copy of the Order in Court, which was entered on March 7, 2024.

3

[* 3]

unavailable today, asking for another adjournment. Mr. Akin opposed the adjournment and argued that (1) the adjournment request is again proof of Defendant Cohen's dilatory and abusive conduct which should not be rewarded; (2) regardless of any attorney retained or said attorney's availability, since the Defendant failed to submit an opposition by March 25, 2024, the OSC is now unopposed, making the adjournment moot; and (3) regardless of his attorneys availability, Defendant Cohen had refused to respond to the information subpoena by the March 14, 2024 deadline as directed by this Court[2], concluding that an attorney retained by Defendant Cohen at this time cannot undo the current violations of this Court's Order, insisting that the request be denied and the OSC be heard unopposed.

The Court, extending one last courtesy to the Defendant, granted his second request adjourning the OSC to April 15, 2024, with a strict caveat that Defendant must appear with counsel ready to argue the OSC and that he would not be granted any further adjournments; that the OSC was marked final for April 15, 2024.

On April 15, 2024, before this Court appeared, Zafer A. Akin, Esq., for the plaintiff, Joshua Bronstein, Esq., for Defendant Cohen, and William Schleifer, Esq., for the non-party Shmuel David Taub. The non-parties Gilad Cohen and Jacob C. Elbogen defaulted in appearance. Mr. Bronstein requested an adjournment without showing any good cause. The request was denied and the OSC was heard.

### Historical and Procedural Background:

At all times Defendant Cohen was personally the owner of the Property, which is a three-family residential dwelling. Sometime in 2015, Plaintiff Makmudova rented one of the units from

---

[2] Mr. Akin showed the Court a copy of what Defendant Cohen returned to the Plaintiff as his response to the Information Subpoena (which Defendant Cohen did not dispute) which consisted of the Information Subpoena with each page crossed out without a single interrogatory answered.

Defendant Cohen. On or about November 30, 2015, Defendant Cohen, as the owner of the Property, commenced an action against Plaintiff Makmudova in Landlord & Tenant Court of Kings County (hereinafter "Kings L&T Court") bearing case number LT-00172-15/KI (case was disposed in 2018). On or about April 4, 2016, Defendant Cohen, as the owner of the Property, commenced a second action against Plaintiff Makmudova in Kings L&T Court bearing case number LT-0062821-16/KI. Defendant Cohen obtained an Order of eviction and a judgment for rents owed. On or about May 4, 2016, while in the process of moving out, Plaintiff fell on the Property sustaining what is alleged to be severe and permanent injuries including, but not limited to, a hip fracture which required surgical intervention with the insertion of hardware. On December 8, 2016, the instant action herein was commenced by Plaintiff Makmudova against Defendant Cohen. On or about June 16, 2017, default was entered against Defendant Cohen.

On or about October 26, 2017, upon an Inquest held before the Hon. Derefim Neckles, a Judgment, inclusive of costs and disbursements was awarded in favor of the Plaintiff and against the Defendant in the sum of $812,468.00.

On or about April 18, 2018, Defendant Cohen submitted his First Application (OSC) (with his First Affidavit) to vacate the default and affirmed under penalties of perjury that the reason for the request was because he was not personally served (never denying ownership of the Property or making any claim that the property was allegedly transferred to a Trust). Said OSC was denied. NYSCEF Doc. No. 41.

On August 21, 2018, Defendant Cohen submitted his Second Application to vacate the default and affirmed under penalties of perjury that the reason for the request was because he was not personally served. Again, Defendant Cohen did not deny ownership of the Property or make any claim that the property was allegedly transferred to a Trust. To the contrary, Defendant Cohen

5

Affirmed to the Court and the Plaintiff, under the penalties of perjury, stating "...**I own 3731 Nautilus Avenue in Brooklyn**" Cohen's Second Affidavit (NYSCEF Doc. No. 49).

On October 9, 2018, Defendant Cohen submitted another Affidavit to Court and again affirmed under the penalties of perjury that he is the owner of the property; his only objection to the default was based on service of process. Cohen's Third Affidavit (NYSCEF Doc. No. 70).

On October 25, 2018, the Court issued an Order referring the matter to a Traverse Hearing to decide the issue of service only. The issue of the Defendant being the sole owner, as admitted by the Defendant and Ordered by the Court was not disturbed. NYSCEF Doc. No. 73.

On January 8, 2019, a Traverse hearing was held, and a transcript generated (copy of which is filed with the Court at NYSCEF Doc. No. 85), on the sole issue of Service. At the hearing the Defendant admitting to ownership of the Property, only challenging service.

On October 15, 2019, an Order was issued by this Court (Hon. Derefim Neckles), which reads as follows: "Pursuant to a JHO/referral order of Justice Lara Genovesi, a traverse hearing in this matter was held before the undersigned to hear and determine the issue of whether Defendant Abraham Cohen (defendant) was properly served with process in this action... Accordingly, the undersigned finds that service was properly effectuated on defendant Abraham Cohen, pursuant to CPLR 308(2). The Order was duly served, entered and filed with the Court, NYSCEF Doc. No. 88.[3]

October 30, 2019, Defendant filed another motion, this time to set aside the October 15, 2019, dated Decision and Order of Special Referee Neckles, issued following the Traverse

---

[3] Court's prior Orders declaring defendant Cohen as the owner of the property was not disturbed, (Defendant having acknowledged, numerous times, to be the Owner of the Property under oath). Lastly, Defendant being the rightful and legal owner of the property was never challenged before or reserved for an appeal.

[* 6]

Hearing. NYSCEF Doc. No. 78.

On February 26, 2020, this Court issued its Decision and Order, denying the Defendant's motion to set aside the Decision and Order of Special Referee Neckles, and denied vacating the Judgment for a 4th time. NYSCEF Doc. No. 96.

On March 19, 2020, Defendants filed his Notice of Appeal on six different grounds, none of which contested ownership or claimed that the property was owned by any alleged Trust. Defendant Cohen never appealed, opposed, or took leave from any of the Court's prior Orders which declared Defendant Cohen the Owner of the Property (in the Court below or on appeal). NYSCEF Doc. No. 97.

On July 2, 2021, Defendant perfected the appeal by filing his brief, which again, admitted Ownership of the property; the only challenge to the Order below was based on service of process. NYSCEF 2020-03350 - Appellate Division, Doc. No. 4 & 5.

**On** February 9, 2023, the Appellate Division, Second Department issued its Decision & Order affirming with costs, the Order of this Court dated February 26, 2020, which had denied vacating the Judgment, NYSCEF 2020-03350 - Appellate Division, Doc. No. 19; Copy annexed hereto as Exhibit G.

On or about May 19, 2023, the Decision and Order of the Appellate Division was duly Entered and served upon Defendant Cohen; NYSCEF Doc. No. 108, 109 & 121.

**On** June 29, 2023, the Plaintiff served upon Defendant Cohen via certified mail[4] (a) a Certified Copy of the Judgment filed on December 22, 2017, (b) a Restraining Notice pursuant CPLR 5222; (c) a CPLR 5222(e) Notice to Judgment Debtor; (d) an Information Subpoena with a

---

[4] The USPS verification indicates that the Certified Mail containing the Information Subpoena was delivered to the Defendant on July 3, 2023.

7

Questionnaire with Exhibits A and B; and (e) a Subpoena *Decus Tecum Ad Testificandum*. NYSCEF Doc. No. 106.

Instead of responding to the Subpoenas served on or about August 24, 2023, Defendant Cohen, despite being served with the Restraining Notice, transferred the Property located at 3731 Nautilus Avenue, Brooklyn, New York to the Irrevocable Trust of Abraham Cohen by recording in the Kings County Clerk's Office a Deed that was allegedly drafted on July 28, 2014. NYSCEF Doc. No. 122.

Following the transfer of the Property, on or about September 20, 2023, Plaintiff moved by way of the instant OSC, which was heard on April 15, 2024, is GRANTED as follows:

## I. __The Irrevocable Trust of Abraham Cohen is hereby declared Null and Void, *Ab Initio.*__

The four essential elements of a valid trust of personal property requires: (1) A designated beneficiary; (2) a designated trustee, who must not be the beneficiary; (3) a fund or other property sufficiently designated or identified to enable title thereto to pass to the trustee; and (4) the actual delivery of the fund or other property, or of a legal assignment thereof to the trustee, with the intention of passing legal title thereto to him as trustee." (*Martin v. Funk*, 75 N. Y. 134; *Matson v. Abbey*, 70 Hun, 475; *aff'd.*, 141 N. Y. 179; *Greene v. Greene*, 125 N. Y. 506; [*210] Young v. Young, 80 id. 422; *Sullivan v. Sullivan*, 161 id. 554.)

Although a lack of any one of the above four elements would void the Trust, this Court holds that the Irrevocable Trust of Abraham Cohen (hereinafter "the Trust") is void for two separate and distinct reasons; (1) there was no actual designated Trustee, and (2) there was no actual delivery of the property to the Trust.

### *No Actual Delivery of Property to the Trust:*

The Defendant transferred the property to the Trust without any payment, making an *inter*

8

[* 8]

*vivos* gift, Defendant Cohen's brother, Gilad Cohen, was listed as the Trustee and Defendant Cohen as the Beneficiary. Plaintiff challenges the validity of the transfer, arguing that an irrevocable *inter vivos* gift never occurred. We Agree.

The proponent of the gift bears the burden of proving each element of the gift by "clear and convincing evidence." *In re Katz*, 154 A.D.3d 687, 62 N.Y.S.3d 441, 2017 N.Y. Slip Op. 06945 (2nd Dept. 2017). Once the Plaintiff challenged the Property being gifted to the Trust, it became incumbent upon Defendant Cohen and the Trust to prove each element by "clear and convincing evidence."

The elements necessary to establish an *inter vivos* gift are: (1) donative *intent to make an irrevocable transfer of ownership*; (2) actual physical or constructive delivery of the property; and (3) acceptance of the gift by the donee. *Gruen v. Gruen*, 68 N.Y.2d 48, 505 N.Y.S.2d 849, 496 N.E.2d 869 (1986).

Not only has Defendant Cohen and the Trust failed at proving the existence of a gift, which they were obligated to do, the Plaintiff, who did not have any obligation, provided ample undisputed proof that that there was no donative intent, no delivery or the Property and no acceptance by the Trust. Although any singe element would have sufficed, the Plaintiff has submitted undisputed prof of all three.

A.    Donative Intent. "An *inter vivos* gift requires that the donor intend to make an irrevocable present transfer of ownership" *Juliano v. Juliano*, 145 A.D.3d 983, 984, 44 N.Y.S.3d 482 (2nd Dept. 2016), *quoting Gruen v. Gruen*, 68 N.Y.2d at 53, 505 N.Y.S.2d 849, 496 N.E.2d 869. Defendant Cohen had to demonstrate his absolute intent to pass possession of the Property to the Trust. Throughout seven years of litigation, Defendant Cohen held himself to be the sole and exclusive person owning and controlling the property with the name of the Trustee (Gilad Cohen)

9

[* 9]

or the Trust never appearing anywhere (in name or by deed). The proofs unequivocally show that (1) Defendant Cohen always retained full control over the property (personally renting the units to tenants (including the Plaintiff), collecting rents (which he used said for his own benefit), insuring the property, litigating on behalf of the property, making repairs, etc.).

B. <u>Property was Never Delivered to the Trust.</u> Defendant Cohen never actually delivered the Property to the Trust. Although it was incumbent upon Deferent Cohen to show that he delivered the Property to the Trust, Defendant Cohen, failed to provide any such proof. Contrary to the Defendant, the Plaintiff, without having any obligation, provided ample undisputed proof (consisting of Defendant Cohen's own Affidavits submitted to Court, his renting of the Property to Tenants (including the Plaintiff) and the actions he commenced in Landlord Tenant Courts, tax documents from NYC, insurance policies, etc.) that Defendant Cohen always remained in full possession and control of the Property.

C. <u>The Property was Never Accepted by the Trust.</u> The Trust never accepted the Property. Although it was incumbent upon the Trustee to show acceptance and possession of the Property, the Trustee, Gilad Cohen, failed to provide even the minutest proof that the Trust accepted the Property. Contrary to the Trustee, the Plaintiff, without having any obligation, provided ample undisputed proof (consisting of Affidavits, actions commenced in Court, tax documents, insurance policies, etc.) that the Property was never in the possession of the Trust.

Since there is no actual delivery of the Property to the Trust, the Irrevocable Trust of Abraham Cohen is hereby held to be Null and Void, *Ab Initio.*

### *No Actual Designated Trustee:*

Although the Court does not need to go any further, the Irrevocable Trust of Abraham Cohen having been declared Null and Void, *Ab Initio*, for purposes of clarity, the Court also holds

10

that the Trust is Null and Void, *Ab Initio*, for lack of having a Trustee.

Gilad Cohen does not become a trustee by simply being named. A named trustee must first accept the office of trustee before being legally authorized to undertake his duties as trustee. It is in the nature of an offer which must first be accepted by the designated trustee before the donative intent of the settlor is given effect. See, *Bogert, Trusts and Trustees* § 150, at 75 (2d rev ed 1979) and *In re Goldowitz*, 145 Misc 300, 305 (Sur Ct, Kings County 1932). One named as a trustee in a trust instrument who has not accepted the office of fiduciary is not legally authorized to act with respect to the trust or its assets (*Bogert, The Law of Trusts and Trustees* § 150).

The fiduciary relationship between trustee and beneficiary requires a trustee to assume active duties and responsibilities with respect to the trust estate, including:

a.  taking possession of the trust property;
b.  selling, renting or mortgaging trust property;
c.  collecting rent or dividends on the trust property;
d.  insuring the trust property;
e.  carrying on a business when required to do so by the trust;
f.  allocating receipts and expenditures of the trust;
g.  timely filing income tax returns on behalf of the trust; and,
h.  accounting to the beneficiaries.

In other words, for there to be an actual Trustee, the person named as a Trustee (Gilad Cohen) must actually act as a Trustee performing acts such as those listed above. Defendant Cohen and the Trust having failed to show even a single act by Trustee Gilad Cohen, the Court is left with no alternative but to conclude that Gilad Cohen never accepted appointment as a Trustee. The Irrevocable Trust of Abraham Cohen is hereby held to be Null and Void, *Ab Initio,* for having no actual designated Trustee who has accepted same.

This Court having held The Irrevocable Trust of Abraham Cohen to be Null and Void, *ab initio*, the County Clerk of Kings County and the NYC Department of Finance, Office of the City

11

Register are hereby ORDERED to: (1) void from its records the Deed and the Recording and Endorsement bearing document id: 2023082400457001, (transferring the property identified as 3731 Nautilus Avenue, Brooklyn, New York 11224 (block 07003, lot 0053) and (2) directing that said Deed be Expunged from the records of the Kings County Clerk, immediately upon service of a copy of the order herein.

## II. Defendant Cohen and Gilad Cohen have engaged in a Fraudulent Conveyance / Voidable Transaction.

The Plaintiff further moves for a Declaration that Defendant Cohen and Trustee Gilad Cohen jointly attempted to and/or actually engaged in a Fraudulent Conveyance, seeking: **(1) avoidance of the transfer, (2) attachment against the transferred asset, (3) a preliminary injunction restraining the defendant from disposing of the asset, (4) the appointment of a receiver to take charge of the asset, (5) monetary damages, and (6) attorneys' fees, costs and sanctions.** Since the statute has been amended, the Court will address the history and the current law as applicable to this Case.

### *Injunctive Relief from the Fraudulent Conveyance (Voidable Transaction).*

Fraudulent conveyance (Voidable Transaction) actions in New York are governed by the New York Debtor and Creditor Law ("NYDCL"). *See, N.Y. Debt. & Credo Law §§27D-281.* Because "[the provisions of the New York Debtor and Creditor Law ... are declaratory of common law principles," *30 N.Y. Jur. 2d Creditors' Rights, § 295 (1997)*, citing *Palermo V. Patterson, 219 A.D. 832, 222 N.Y.S. 220 (1927)*, New York's Debtor and Creditor Law cannot be construed to limit a creditor's potential remedy at common law, id. (*citing, James V. Powell, 25 A.D.2d 1, 266 N.Y.S.2d 245 (1st Dep't 1966), rev'd on other grounds, 19 N.Y.2d 249, 255 N.E.2d 741,279 N.Y.S.2d 10 (1967).*

12

Previously, in New York Fraudulent Conveyances were covered by the Uniform Fraudulent Conveyance Act ("UFCA"). Under the UFCA, a creditor seeking to set aside a fraudulent conveyance generally had the burden of establishing *Fraudulent Intent*, i.e. that the debtor intended to hinder, delay, or defraud either present or future creditors. *See, N.Y. Debt. & Credo Law § 276.* Fraudulent intent, however, was presumed where the conveyance was made without fair consideration. *See, N.Y. Debt. & Cred. Law §273; see also, American Inv. Bank, N.A. V. Marine Midland Bank, N.A.,* 191 AD.2d 690, 691, 595 N.Y.S.2d 537, 538 (2d Dep't 1993). "[W]hen a transfer is made without fair consideration, a presumption of insolvency and fraudulent transfer arises, and the burden shifts to the transferee to rebut that presumption." *Palmerone v Staples,* 195 AD3d 736, 738 (2d Dept 2021) (emphasis added). A creditor is not required to make a "showing of actual motive or intent to defraud." *Id., See* also, *Gallagher v Kirschner,* 220 AD2d 948, 949 (3d Dept., 1995) (finding that even where a transfer was made by operation of law, the creditor could set aside the transfer, as a fraudulent conveyance, under *Debtor & Creditor Law Section* 273, if the transfer rendered the debtor entity/estate insolvent).

On December 6, 2019, New York State replaced its version of the Uniform Fraudulent Conveyance Act ("UFCA") with the Uniform Voidable Transactions Act ("UVTA"), *N.Y. Debtor and Creditor Law §§ 271-281.* The NY-UVTA became effective on April 4, 2020, and *applies* to transactions occurring on or after that date, including the transfer of the Property from Defendant Cohen to the Trust on August 24, 2023.

The NYDCL, with the adoption of the UVTA, did not substantially change existing New York law, and a creditor may recover for the fraudulent transfer of a debtor's assets from defendants who are either transferees of the assets, or beneficiaries of the conveyance. The purpose

13

of the NYDCL is still to protect creditors[5] from fraudulent transactions entered into by the debtors in attempt to shelter assets[6] from the estate. *See, Hassett V. Goetzman,* 10 F. Supp. 2d 181, 188 (N.D.N.Y. 1998) *(applying New York law).* Pursuant to the UFCA, fraudulent conveyances resulted from either "actual fraud", where a debtor transfers property to hinder, delay or defraud a creditor, or from "constructive fraud", where an insolvent debtor transfers property for less than "fair consideration." With the adoption of the UVTA, the term "fraudulent" was removed from the statute's title, eliminating the need to prove intent. Furthermore, while the UFCA allowed for an award of attorneys' fees only to a party who successfully established that a transfer was intentionally fraudulent, the UVTA provides for attorneys' fees in all cases (regardless of intent) to a party who is successful in setting aside a transaction regardless of whether the transaction was constructively fraudulent or intentionally fraudulent. (see *Section 276-a).*

In the instant case, Defendant Cohen has not disputed that he transferred the Property to the Trust without any consideration whatsoever, despite the Restraining Notice (122), and with full knowledge of the Judgment entered against himself. Since, Defendant has not submitted any proofs to the contrary, there can be no dispute that Defendant's sole intent was to deprive Plaintiff Makmudova of the judgment she obtained, making the transfer not only voidable pursuant to the UVTA, but a Fraudulent Conveyance even under the previous **statute (UFCA).** As such, the Deed transferring the Property from Defendant Cohen to the Trust is hereby declared a Transaction to be voided under the UVTA; although the Court need not reach so far,

---

[5] "Creditor" is defined under the New York Debtor & Creditor Law as a person having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent. *See N.Y. Debt. & Credo Law §270.*

[6] "Assets" of a debtor are defined as property not exempt from liability for his debts. *See N.Y. Debt. & Credo Law §270.*

14

the transfer would be deemed a Fraudulent Conveyance under the UFCA.

Although this Court has already declared the Irrevocable Trust of Abraham Cohen to be Null and Void, *Ab Initio*, and directed the Deed transferring the Property from the Defendant Cohen to the Trust to be voided, the request herein is still not moot. Plaintiff has provided ample proof that Defendant Cohen attempted to and actually engaged in a Fraudulent Conveyance (not just a Voidable Transaction)[7], which must be addressed by this Court in its entirety requiring relief above and beyond the mere voidance of the transfer.

### *Injunctive Relief, Punitive Damages, Costs and Sanctions from the Fraudulent Conveyance.*

The Plaintiff, as a victim of a fraudulent conveyance, seeks the following reliefs in law and equity:

(1) **Avoidance of the Transfer.** The Plaintiff's request to void the transfer is proper since the Defendant engaged in a Fraudulent Conveyance, (*see, Debt. & Credo Law § 278(l)(a); see also, Society Milion Athena v. National Bank of Greece, 281 N.Y. 282, 293; 22 N.E.2d 374, 377 (1939),* Although the Court already voided the transfer by declaring the Trust null and void, *ab initio,* and directed the County Clerk to void the recording, the Court hereby voids the Deed as an instrument of a Fraudulent Conveyance; the Deed transferring the Property from Defendant Cohen to the Trust is hereby declared Null and Void.

(2) **Attachment Against the Property.** The Defendant having engaged in a Fraudulent Conveyance, despite the Judgment and the Restraining Notice (NYSCEF Doc. No. 141), *(See N.Y. Debt. & Credo Law § 278(1)(b); see also Sheils V. Donohue,* 6 Misc. 2d 610, 161 N.Y.S.2d 622 (N.Y. Sup. Ct. 1957)), *attachment is proper.* An Order of Attachment is granted and issued

---

[7] The involvement of non-party Gilad Cohen, albeit in default, is not as clear or certain.

[* 15]

under separate cover.

(3) **Injunction Restraining the Defendant.** Plaintiff's request for an injunction restraining the Defendant from disposing, mortgaging, or causing harm or injury to the Property, albeit proper *(see, N.Y. Debt. & Credo Law § 279(a); see also, In re Standard Tile Co.,* 257 AD.834, 12 N.Y.S.2d 188 (2d Dep't 1939), is moot since the Court already issued an Order on February 26, 2024 (NYSCEF Doc. No. 141) for the same relief.

(4) **Appointment of a Receiver.** Since the Defendant engaged in a Fraudulent Conveyance, despite the Judgment and the Restraining Notice (NYSCEF Doc. No. 141), the appointment of a Receiver to take charge of the asset is merited. *(See, N.Y. Debt. & Credo Law § 279(b);* Matthews V. Schusheim, 36 Misc. 2d 918, 235 N.Y.S.2d 973 (N.Y. Sup. Ct. 1962), rev'd on other grounds, 18 AD.2d 719, 192 N.E.2d 28, 236 N.Y.S.2d 407 (1963*))* and/or all of the above. An Order assigning a Receiver is issued under separate cover.

(5) **Monetary Damages.** Since the Defendant engaged in a Fraudulent Conveyance, despite the Judgment and the Restraining Notice (NYSCEF Doc. No. 141), awarding of monetary damages is Proper. *(See, Foxv. Erbe,* 100 A.D. 343, 91 N.Y.S. 832 (1st Dept., 1905), *aff'd,* 184 N.Y. 542, (1906); *Gruenebaum v. Lissauer,* 185 Misc. 718,57 N.Y.S.2d 137 (N.Y. Sup. Ct., 1945), *aff'd,* 270 A.D. 836, 61 N.Y.S.2d 372 (1st Dept., 1946)).

The Court Awards the Plaintiff fifty thousand dollars ($50,000.00) as an award against Defendant Abraham Cohen.

(6) **Costs and Sanctions.**

"The Courts of record in New York have inherent power to impose financial sanctions upon parties or their attorneys who engage in abusive litigation practices." *Gabrelian v. Gabrelian,* 108 A.D.2d 445, 489 N.Y.S.2d 914 (2nd Dept., 1985). Furthermore, part 130 of the Uniform Rules

16

[* 16]

for Trial Courts, 22 NYCRR §130, authorizes the Court, in its discretion to award cost and sanctions against any party or attorney for frivolous conduct, which has been defined to include any conduct undertaken primarily to delay or prolong the resolution of an action. "...both statutory authority (CPLR 8303-a) and regulatory authorization -- the Uniform Rules for Trial Courts (22 NYCRR 202.12[g]) -- empower this court to take appropriate action to assess costs."

However, at this juncture, the court is denying the request for costs and sanctions in this action.

### *Res Judicata* and Collateral Estoppel.

The Plaintiff further moves to vacate the transfer of the Deed from Defendant Cohen to the Trust. Although the principals of *Res Judicata* and Collateral Estoppel would both be applicable, they are moot since the Court has vacated the transfer of the Property and voided the Deed. If the Court had not granted such relief, based on the Principals of *Res Judicata* and Collateral Estoppel, the Defendant would have been prevented from asserting that the Deed transferred the property to the Trust on July 28, 2014.

### *Res Judicata.*

Under the doctrine of *Res Judicata*, or claim preclusion, "a final adjudication of a claim on the merits precludes re-litigation of that claim and all claims arising out of the same transaction or series of transactions by a party or those in *privity* with a party."); *see also, SSJ Dev. of Sheepshead Bay I, LLC v. Amalgamated Bank*, 128 A.D.3d 674, 675 (2nd Dept., 2015); *Landau, P.C. v LaRossa, Mitchell & Ross*, 11 NY3d 8, 13, 892 N.E.2d 380, 862 N.Y.S.2d 316 (2008); *Matter of Grainger*, 309 NY 605, 616 (1956).

"A disposition on the merits bars litigation between the same parties, or those in *privity* with them, of a cause of action arising out of the same transaction or series of transactions as a

17

cause of action that either was raised or could have been raised in the prior proceeding." (*Sciangula v Montegut*, 165 AD3d 1188, 1190, 87 NYS3d 47 (2018) [*internal quotation marks omitted*]; *see Matter of Hunter*, 4 NY3d 260, 269, 827 NE2d 269, 794 NYS2d 286 (2005)). See also, *Josey v. Goord*, 9 N.Y.3d 386, 389, 880 N.E.2d 18, 849 N.Y.S.2d 497 (2007); *Tromba v. E. Fed. Sav. Bank, FSB*, 148 A.D.3d 753, 754, 48 N.Y.S.3d 501 (2d Dept. 2017).

"Indeed, defaulters are deemed to have admitted all factual allegations contained in the complaint and all reasonable inferences that flow from them." *Woodson v. Mendon Leasing Corp.*, 100 N.Y.2d 62, 760 N.Y.S.2d 727, 790 N.E.2d 1156 (2003), (*also see Rokina Opt. Co. v Camera King*, 63 N.Y.2d 728, 730, 480 N.Y.S.2d 197, 469 N.E.2d 518 (1984)).

Defendant Cohen, who defaulted below, is deemed to have admitted all the allegations of the Complaint, including ownership of the Property. Such a disposition bars Defendant Cohen and the Trust, which is in *privity* with Defendant Cohen, from asserting ownership over the Property. As such, the Deed, allegedly dated July 28, 2014, which first surfaced on August 24, 2023, by way of its recording, is hereby declared and held to be null and void.

## Collateral Estoppel.

A formal judicial admission "is an act of a party done in the course of a judicial proceeding, which dispenses with the production of evidence by conceding, for the purposes of the litigation, the truth of a fact alleged by the adversary." (*Prince, Richardson on Evidence*, § 8-215). Collateral Estoppel "bars re-litigation of an issue which has necessarily been decided in a prior action and is decisive of the present action if there has been a full and fair opportunity to contest the decision now said to be controlling." *Marceda v. Mitkowski*, 141 A.D.3d 508, 509, 35 N.Y.S.3d 246 (2d Dept. 2016); *Ryan v. N.Y. Telephone Co.*, 62 N.Y.2d 494, 500, 467 N.E.2d 487, 478 N.Y.S.2d 823 (1984).

18

[* 18]

The Court already having declared the Trust to be void, having voided the Deed, and having declared the transfer of the Property from Defendant Cohen to the Trust to be a Fraudulent Conveyance, the Court need not take a position on this principal as same is moot.

III. ***Public Policy.*** Plaintiff further argues that the conveyance of the Property to the trust in 2023, putting aside all other arguments, should still be declared null and void in the interest of justice as against Public Policy. Although Plaintiff makes a compelling Public Policy argument, the Court already having declared the Trust to be void, having voided the Deed, and having declared the transfer of the Property from Defendant Cohen to the Trust to be a Fraudulent Conveyance, the Court need not take a position on this principal as same is moot.

IV. ***Civil Fraud and Referral to the Attorney General.***

Plaintiff has set forth a chronological, detailed and rather convincing list of events, albeit circumstantial, raising a high level of suspicion as to the Deed transferring the property to the Trust being genuine. With said proofs, the Plaintiff is seeking a declaration from the Court holding Deed conveying the Property to the Trust and the Trust Documents to be deemed "Fraudulent Documents" created in 2023 and back dated to 2014 and requesting to add the Trust, the trustee Gilad Cohen, Jacob C. Elbogen (the notary on the Deed) and Shmuel Duvid Taub (the attorney that recorded the Deed) as additional respondents/defendants seeking $1,000,000 in additional damages and $100,000 in sanctions.

Although the non-parties Gilad Cohen and Jacob C. Elbogen have defaulted, with only non-party Shmuel Duvid Taub opposing the relief and Defendant Cohen having failed to provide any proof in admissible form to dispute the Plaintiff's evidence with the documentary proofs submitted, the Court is not able to make such a finding. The Plaintiff would have to commence a separate action, with due process rights awarded to all parties and factual disputes being determined

19

accordingly.

Plaintiff's motion seeking damages against Defendant Cohen and the non-parties based on the Deed being a document fraudulently drafted in 2023 and back dated to 2014, is reserved without prejudice.

## V.    *Defendant Cohen to be Held in Contempt (Civil and Criminal).*

Plaintiff's application for an Order (a) Holding the Defendant in **Civil and Criminal Contempt**; (b) directing Defendant Cohen to respond to the Information Subpoena and appear for his examination under oath by days certain; (c) Sanctioning the Defendant $1,000.00 per day until Defendant complies with the information subpoena; (d) issuing a warrant for Defendant's arrest and incarceration until compliance; and (e) Awarding Plaintiff fees and costs incurred in enforcing the Subpoena, including but not limited to the application herein in an amount to be determined by the Court is GRANTED.

"CPLR 5223 compels disclosure of 'all matter relevant to the satisfaction of the judgment." A judgment creditor is entitled to discovery from either the judgment debtor or a third party in order 'to determine whether the judgment debtor concealed any assets or transferred any assets so as to defraud the judgment creditor or improperly prevented the collection of the underlying judgment." *Technology Mul Sources, S. A. v. Stack Global Holdings, Inc.,* 44 A.D.3d 931, 845 N.Y.5S.2d 357 (2nd Dept., 2007) *Young v. Torelli,* 135 A.D.2d 813, 522 N.Y.S.2d 918 (2nd Dept., 1987)); *See also Longwood Associates v. A.J. Apparel, Inc.,* 249 A.D.2d 453, 671 N.Y.5.2d 303 (2nd Dept., 1998).

"Under New York law, judgment creditors are entitled to broad disclosure in aid of judgment enforcement." *U.S. Bank Nat'l Ass. v APP International Finance Co. B.V.,* 100 AD3d 179 (1st Dept, 2012). "Disclosure authorized by CPLR 5223 is particularly appropriate in this case

since it appears that [judgment debtor] has not been forthright in disclosing his assets" *Rozzo v Rozzo*, 274 AD2d 53 (2nd Dept., 2000). "It is patent that, pursuant to CPLR 5223, all matters relevant to the satisfaction of the judgment is discoverable and the public policy is to put no obstacle in the path of those seeking to enforce a judgment." *ICD Group v Israel Foreign Trade Co. (USA)*, 224 AD2d 293, (1st Dept., 1996).

**Civil Contempt.**

Disobedience need not constitute deliberate or willful behavior to sustain a finding of civil contempt. *Comm'r of Labor v. Hinman*, 103 A.D.2d 886, 887, 478 N.Y.S.2d 116, 119 (1st Dept., 1984) (*citing Klein v. McGauley*, 29 A.D.2d 418, 420 (2nd Dept.,1968)) (holding that defendant's failure to comply with the duly issued subpoena constituted contempt of court). The mere act of civil contempt, regardless of motive, is sufficient if such disobedience defeats, impairs, impedes, or prejudices the rights of a judgment creditor. *Id.*

*CPLR 5251* explicitly authorizes punishment for contempt in the post-judgment context, providing that "refusal or willful neglect of any person to obey a subpoena or restraining notice issued, or order granted, pursuant to this title...., shall be punishable as a contempt of court." Indeed, New York courts regularly hold parties in contempt for failure to comply with their post-judgment disclosure obligations (*see, Spent Serv., Inc. v Marcano*, 2015 NY Slip Op 32021 (Sup. Ct, NY Co., 2015).

Among the remedies available to a court exercising the civil contempt power is to incarcerate the noncompliant party for a period of time under the condition that they will be released when they purge their contempt. *See N.Y.C. Tr. Auth. v. Transport Workers Union of Am., AFL-CIO*, 35 A.D.3d 73, 86 (2nd Dept., 2006) ("imprisonment for a fixed term, during which the contemnor may 'purge' the contempt and obtain early release by committing an affirmative act, is a

21

[* 21]

coercive, civil penalty.") (*citing Int'l Workers v. Bagwell*, 512 U.S. 821, 828 (1994)); *People ex rel. Feldman v. Warden, N.Y.C. Corr. Inst. for Women*, 46 A.D.2d 256, 258 (1st Dept., 1974) (stating that "[t]he law is clear" that one who has been ordered by a court to perform an act, if the person is able to perform it, may be imprisoned until he or she has performed it). Refusal to make a court-ordered payment is a classic example of an act of civil contempt justifying incarceration as a coercive remedy. *See, Rubackin v. Rubackin*, 62 A.D.3d 11, 15 (2nd Dept., 2009) (*citing Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 441-42 (1911)).

It is unquestionable that Plaintiff's rights to collect on the judgment were impaired and prejudiced by Defendant's refusal to respond to the Information Subpoena and the Order of this Court. The Plaintiff was further prejudiced by the Recording of the Deed which occurred shortly after Defendant was served with a Restraining Notice. Considering the proofs, this Court holds the Defendant in Civil Contempt.

## Criminal Contempt.

"A court of record has power to punish, by fine and imprisonment, or either, a neglect or violation of duty, or other misconduct, by which a right or remedy of a party to a civil action or special proceeding, pending in the court may be defeated, impaired, impeded, or prejudiced ... for any other disobedience to a lawful mandate of the court." *Matter of Mccormick v. Axelrod*, 59 N.Y.2d 574, 466 N.Y.S.2d 279, 453 N.E.2d 508 (1983). "Criminal contempt ... involves vindication of an offense against public justice and is utilized to protect the dignity of the judicial system and to compel respect for its mandates" *Id.* at 476.

"Unlike civil contempt, the aim in a criminal contempt proceeding is solely to punish the contemnor for disobeying a court order, the penalty imposed being punitive rather than compensatory to establish criminal contempt based on an alleged violation of Court order, as with

22

civil contempt." *Environmental Protection v. D.E.C.*, 70 N.Y.2d 233, 519 N.Y.S.2d 539, 513 N.E.2d 706 (N.Y. 1987).

The dignity of the Judicial system mandates that parties before the Court must adhere to the Orders issued by this Court. Defendant Cohen's obligation to respond to the Information Subpoena, as the Document Demands and to appear for an Examination Under Oath is unquestionable, especially when a response was directed by this Court by way of its Order on February 26, 2024. Although Counsel for Defendant Cohen stated that his client responded to the Information Subpoena, a copy of the response was not produced. To the contrary, Plaintiff's counsel produced a copy of the response provided and signed by Defendant Cohen, which was the Information Subpoena with each page crossed out, without a single answer provided.

It is evident Defendant Cohen never responded to the Information Subpoena, the Document Request, or appeared for an Examination Under Oath, despite this Court's Order on February 26, 2024 (NYSCEF Doc. No. 141) directing compliance. Since the April 15, 2024, court date, Defendant Cohen still has not provided any proof of his compliance with the Information Subpoena.

As such, and upon defendant having been provided an opportunity to appear, be heard and comply with this Court's orders, and having failed to do so and/or provide a reasonable excuse for not having complied with the Court's orders, it is hereby

**ORDERED**, that Defendant Cohen is held in Civil and Criminal Contempt of this Court and is sanctioned $2,500.00 for the contemptuous acts committed to date, and it is further

**ORDERED**, that Defendant Cohen, is sanctioned $1,000.00 per day, upon the entry of this Order, for each day should the Defendant remain non-compliant with the Court's Order herein.

In addition, upon Plaintiff notifying the Court, a warrant shall be issued on the 10th day

23

following the entry of this Order, for Defendant Cohen's arrest and incarceration with Defendant Cohen remaining incarcerated until he provides a full response to the Information Subpoena and sets a date certain for his Examination Under Oath to take place within sixty (60) days, which may not be adjourned without a further Order of this Court[8].

It is hereby further **ORDERED**, that Defendant Cohen will be subject to payment of Plaintiff's Counsel costs and attorneys' fees, upon Plaintiff's Counsel submitting an Affirmation for the Court's consideration.

Unless all amounts indicated herein are **paid within fifteen (15) days**, Defendant Cohen shall be held in further Contempt for which the Court shall issue the appropriate relief, including but not limited to further incarceration and a further monetary award.

## Attorneys' Fees

Plaintiff has further moved for attorneys' fees associated with (1) Defendant's refusal to comply with the Information Subpoena and the Restraining Notice, (2) Defendant's engagement in a Fraudulent Conveyance/Voidable Transaction, and (3) Defendant's contemptuous acts to date, all of which required the Plaintiff to make the instant application. The Plaintiff's request for attorneys' fees is Granted.

Although CPLR 2308(a) does not expressly provide for an award of attorneys' fees incurred in making a successful contempt motion in connection with a judicial subpoena, the court is authorized by Judiciary Law § 773 to award such fees in connection with a motion pursuant to CPLR 2308(a) (*see Impact CarPark v Mutual Redevelopment Houses*, 2021 NY Slip Op 30950[U], 2021 NY Misc LEXIS 1316, *5-6 (Sup Ct, N.Y. County, Mar. 26, 2021)).

---

[8] Although incarceration is a severe punishment, Defendant Cohen holds the keys to his own cell; he can avoid arrest and imprisonment by simply complying with this Court's Order.

24

In addition, Judiciary Law § 773 permits recovery of attorney fees from the offending party by a party aggrieved by the contemptuous conduct (*see, e.g., Quantum Heating Servs. Inc. v. Austern*, 121 A.D.2d 437, 438, 503 N.Y.S.2d 137 (2nd Dept., 1986). The intent of that section is to indemnify the aggrieved party for costs and expenses incurred as a result of the contempt (*see, State of New York v. Unique Ideas*, 44 N.Y.2d 345, 349, 405 N.Y.S.2d 656, 376 N.E.2d 1301 (1978)).

At this juncture, the court declines to grant attorney's fees due to defendant Cohen's failure to comply with the Information Subpoena.

**ADJUGED** and **DECLARED** that the Order to Show Cause is decided as follows:

**ORDERED**, that the Irrevocable Trust of Abraham Cohen is hereby declared Null and Void, *ab initio;*

**ORDERED**, that the County Clerk of Kings County and the NYC Department of Finance, Office of the City Register: (1) void from its records the Deed and the Recording and Endorsement bearing document id: 2023082400457001, (transferring the property identified as 3731 Nautilus Avenue, Brooklyn, New York 11224 (block 07003, lot 0053) and (2) Expunge said Deed from the records of the Kings County Clerk, immediately upon service of a copy of the order herein.

**ORDERED**, that the transfer of the Property from Defendant Cohen to the Irrevocable Trust of Abraham Cohen being a Voidable Transaction/Fraudulent Conveyance, (1) said Deed is hereby deemed Null and Void, (2) an Order of Attachment, which is merited, shall be issued under separate cover, (3) Defendant Cohen is hereby prohibited and precluded from disposing, mortgaging, or causing any harm or injury to the Property, (4) an Order appointing a Receiver, which is merited, shall be is issued under separate cover, (5) an Award of fifty thousand dollars ($50,000.00) as monetary damages is hereby entered against Defendant Abraham Cohen in favor of the Plaintiff, Judgment to be entered by the Plaintiff forthwith, (6) Plaintiff is granted attorneys'

25

fees and costs, which shall be considered by the Court upon Counsel's submission of an Affirmation.

**ORDERED**, that Defendant Abraham Cohen is hereby held in Contempt of Court, and (1) sanctioned $2,500.00 for his refusal to comply with this Court's Order to date (payable to the Lawyers' Fund for Client Protection); and (2) sanctioned $1,000.00 per day, upon the entry of this Order, for each day that Defendant remains noncompliant (payable to the Lawyers' Fund for Client Protection).

**ORDERED**, that a warrant shall be issued on the 20th day, following the entry of this Order, for Defendant Abraham Cohen's arrest and incarceration; Defendant Abraham Cohen shall remain incarcerated until he provides a full response to the Information Subpoena, provides the Documents Requested, and sets a date certain for his Examination Under Oath, which he must attend (any adjournment must be with Court consent).

**ORDERED**, that Defendant Abraham Cohen make all monetary payments set forth by this Order, within the fifteen (15) days.

**Failure** by Defendant Cohen to make such payments without Court consent shall be deemed a further act of contempt, for which the Court shall issue the appropriate relief, including but not limited to further incarceration and additional monetary sanctions.

This constitutes the decision and order of this Court.

**E N T E R:**

_____

**HON. LISA S. OTTLEY, J.S.C.**

HON. LISA S. OTTLEY

26